Amy R. Atwood
application for admission *pro hac vice* pending
Center for Biological Diversity
P.O. Box 11374
Portland, Oregon 97211-0374
Tel: 503-283-5474
atwood@biologicaldiversity.org

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ) | Case No. _____ |
| Plaintiff, ) | |
| ) | COMPLAINT FOR |
| v. ) | DECLARATORY AND |
| ) | INJUNCTIVE RELIEF |
| U.S. BUREAU OF LAND MANAGEMENT, ) | |
| Defendant. ) | |

## **INTRODUCTION**

1. Plaintiff Center for Biological Diversity challenges Defendant Bureau of Land Management's ("BLM") failure to disclose records requested by Plaintiff pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, *as amended* ("FOIA"). The requested records concern BLM's management of several uranium mines located on public lands near the Grand Canyon National Park. Plaintiff requested the records over six months ago, but BLM has failed to disclose all responsive records within the statutory timeframe of 20 working days, or even identify – let alone justify – any lawful basis for withholding them from Plaintiff.

2. To remedy these violations of law, Plaintiff seeks an order declaring that BLM has failed to comply with the FOIA, and injunctive relief ordering BLM to disclose all responsive records immediately.

## JURISDICTION

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1346, and 5 U.S.C. § 552(a)(4)(B), because this action arises under the laws of the United States, including the FOIA, and involves the United States as a defendant. An actual, justiciable controversy exists between Plaintiff and Defendant. The requested relief is proper under 28 U.S.C. §§ 2201-02 and 5 U.S.C. §§ 705 and 706. The challenged agency actions and/or inactions are subject to this Court's review under the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, and 706 ("APA").

## VENUE

4. Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff maintains a main office Tucson, Arizona and a field office in Flagstaff, Arizona. Assignment is proper in the Phoenix Division because the request for records is processed by the Arizona State Office, which is located in Phoenix.

## PARTIES

5. Plaintiff Center for Biological Diversity is a non-profit corporation with over 43,000 members dedicated to the preservation, protection, and restoration of biodiversity and ecosystems throughout the world. The Center's main office is located in Tucson, Arizona. The Center also has an office in Flagstaff, Arizona. The Center works

through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction.

6. Defendant BLM is an agency within the U.S. Department of the Interior ("DOI"), is responsible for managing federal public lands, and is an agency within the meaning of the FOIA. 5 U.S.C. § 552(f).

## **FACTUAL ALLEGATIONS**

7. On July 30, 2009, Taylor McKinnon, public lands campaigns director at the Center, sent a request for three categories of records to the BLM Arizona State Office ("ASO"), pursuant to the FOIA. Mr. McKinnon requested the information in order to better understand and shed light on BLM's administration of federal public lands, environmental, and mining laws and regulations in connection with numerous controversial uranium mines located on sensitive public lands within the Grand Canyon watershed. Mr. McKinnon sought the information because BLM has allowed certain uranium mines located within the Grand Canyon watershed to resume or commence mining operations or exploration for uranium ore, despite a July 21, 2009 Order of the Department of Interior that temporarily "segregates" certain public lands within the Grand Canyon watershed from location and entry under the 1872 Mining Law, 30 U.S.C. § 22 ("Mining Law"), while DOI considers whether to proceed with a withdrawal of the lands from location and entry under the Mining Law for 20 years in order to "protect the Grand Canyon watershed from adverse effects of locatable hardrock mineral exploration and mining." 74 Fed. Reg. 35887 (July 21, 2009).

3

8.   First, Mr. McKinnon requested "[a]ll records that address, disclose, document, or otherwise discuss Endangered Species Act Section 7 consultation and compliance relating to construction, authorization, approval or operation" of several uranium mines or "deposits" located on BLM lands in the agency's Arizona Strip District, including the Arizona 1, Pinenut, Kanab North, EZ 1, EZ 2, DB, WHAT, and Moonshine Springs uranium mines or deposits (collectively "Mines"). Section 7 of the Endangered Species Act, 16 U.S.C. § 1536(a)(2) ("ESA" or "Act"), and its implementing regulations at 50 C.F.R. Part 400, require federal agencies to consult with the U.S. Fish and Wildlife Service or the National Marine Fisheries Service to consider the effects of their actions to species listed as "threatened" or "endangered" under the Act and "critical habitat" that has been designated for the conservation of listed species.

9.   Second, Mr. McKinnon requested all records that "address, disclose, document, or otherwise discuss requirements or obligations of [BLM] pursuant to the National Environmental Policy Act ["NEPA"], including the potential need to consider new information and/or prepare supplemental NEPA analyses, concerning the authorization or operations" of the Mines. NEPA, 42 U.S.C. § 4321, *et seq.*, and its implementing regulations at 40 C.F.R. Part 1500, require federal agencies to consider the environmental consequences of major actions that affect the quality of the human environment. This is typically done through preparation of an "environmental impact statement" and/or "environmental assessment."

10.   Third, Mr. McKinnon requested all "validity exams and reports that have been approved by a BLM mineral examiner and other non-proprietary records that

4

demonstrate the establishment of valid existing rights on or before 21 July 2009 for all mining claims comprising" the Mines.  Mr. McKinnon requested this information in order to understand whether BLM has determined whether any of the Mines have valid existing mineral rights in light of the Segregation Order.  74 Fed. Reg. 35887 (July 21, 2009) (Segregation Order removing approximately one million acres of public lands in the Grand Canyon watershed from location and entry under the Mining Law for two years, subject to valid existing rights).

      11.    BLM did not provide a determination in response to the Center's request within 20 working days, the statutory deadline for a determination required by the FOIA. 5 U.S.C. § 552(a)(6)(A)(i).  Instead, during the following weeks and months, Mr. McKinnon exchanged several communications with BLM personnel working in the Arizona Strip District Office and Arizona State Office.  Through the course of these communications, Mr. McKinnon agreed to narrow the scope of the Center's request to exclude the third category of records – *i.e.*, validity exams and records that demonstrate the establishment of valid existing rights on or before July 21, 2009 – based on BLM's representation that there are no records responsive to this portion of the Center's request.

      12.    For the other two categories of records, BLM stated that there are no responsive records related to construction, authorization, approval, or operation of the EZ1, EZ2, DB, WHAT, and Moonshine Springs mines.  However, BLM stated that there are a "significant number of records for the Arizona 1, Pinenut, and Kanab North Mines" – in fact, "8 linear feet" of such documents – and asked CBD to provide a time range for responsive records for those mines.

13. In response, Mr. McKinnon stated that the Center would like to "sequence" its response and receive all records related to ESA consultation and NEPA compliance "for the Arizona 1 mine first" and for the Pinenut and Kanab North mines later. After receiving no response for several weeks, the BLM Arizona State FOIA Officer, Toni Klimek, finally responded to Mr. McKinnon and stated that personal reasons had precluded timely processing of the Center's request.

14. After hearing nothing additional for two weeks, on November 20, 2009, Mr. McKinnon again inquired about the status of BLM's response, and was informed that Ms. Klimek was "working on [the Center's] request" and asked Mr. McKinnon whether he wanted to receive copies of comment letters submitted to BLM by members of the public during the agency's development of an Environmental Assessment for the Arizona 1 Project in 1988. Mr. McKinnon responded and confirmed that he would like to receive the comment letters, and also made clear that the Center's request encompassed the following specific categories of records related to the Arizona 1 Mine:

(1) The original plan of operations
(2) The original EA and Decision Record
(3) The modified plan of operations
(4) Records related to ESA-listed species, critical habitat, and/or consultation
(5) Records related to cessation of operations
(6) Records related to any operations or activities since operations ceased

15. BLM subsequently provided two responses to the Center's FOIA request: one dated November 23, 2009 and a final response dated November 27, 2009. The November 23, 2009 response incorrectly stated that the Center had "modified" its original request to include only responsive records related to the Arizona 1 Mine; in fact,

6

Mr. McKinnon had simply requested that BLM sequence its processing of the Center's request, and provide all records related to the Arizona 1 mine first and for the Pinenut and Kanab North mines later.

16. For Arizona 1-related records, BLM's November 23, 2009 response provided two records dated May 1988 and seven e-mails dated between May 17, 2009 and September 14, 2009. Although it improperly construed the Center's request to have been modified to forego access to such records related to other mines, BLM's November 23, 2009 response nevertheless disclosed five records related to the Kanab North, Pinenut, and Canyon mines.

17. BLM's November 23, 2009 release also stated that comment letters submitted to BLM regarding the 1988 Environmental Assessment for the Arizona 1 Mine were undergoing additional review prior to release. These records, with certain information redacted, were subsequently provided to Mr. McKinnon with BLM's November 27, 2009 response.

18. In its November 27, 2009 response, BLM again incorrectly reiterated that the Center had modified its request to completely forego access to records related to the Pinenut and Kanab North mines, and concluded that this "complete[s] the processing of this request."

19. Thus, other than records related to the Arizona 1 Mine from 1988, seven more recent e-mails related to the Arizona 1 Mine, and a few records related to the Kanab North, Pinenut, and Canyon mines, no additional records were provided in response to the Center's request, even though BLM had previously estimated that there are "8 linear

7

feet" of responsive records related to the Arizona 1, Kanab North, Pinenut, and Canyon uranium mines.

20. Specifically, a 1984 Environmental Assessment and Decision Record for the Arizona 1 Mine were not disclosed with any response.  Nor were any drafts of the 1984 or 1988 Environmental Assessments or Decision Records related to the Arizona 1 Mine disclosed, nor any memoranda, meeting notes, phone records, etc. that relate to, concern, or discuss BLM's development of these documents.  Moreover, BLM did not disclose the original or modified plans of operations for the Arizona 1 Mine, or any records related to operations, including the cessation and/or resumption of operations, that have occurred since May 1988.  BLM never identified or described the records comprising the "8 linear feet" of responsive records, or cited any basis for withholding them from the Center.

21. By letter dated December 12, 2009, which was received by Defendant on December 24, 2009, the Center appealed BLM's failure to make a determination in response to its FOIA request.  Twenty working days have elapsed since Defendant received Plaintiff's appeal, with no determination with respect to the requested records or resolution of Plaintiff's appeal.

## **STATUTORY BACKGROUND**

22. The FOIA is a disclosure statute that was enacted to facilitate public access to Government documents.  A federal agency that receives a FOIA request must make a determination within 20 working days whether to release the requested documents.  5 U.S.C. § 552(a)(6)(A)(i).  Although an agency may seek a brief extension of this

deadline, *id*. § 552(a)(6)(B), it may only continue to withhold responsive records if they fall within one or more of the nine exemptions to the FOIA's disclosure mandate. *Id.* § 552(b)(1)-(9).

23.  If the agency decides to withhold access to records pursuant to one of the FOIA's nine, narrowly-construed exemptions, it must identify and describe the records and cite one or more of the exemptions that form the basis of the agency's determination. 5 U.S.C. §§ 552(b)(1)-(9).

24.  The FOIA provides requesters with a right to an appeal of an agency's denial of a request for records. 5 U.S.C. § 552(a)(6)(A)(ii). When presented with an appeal, the agency must make a determination on the appeal within 20 working days. *Id*. A violation of statutory time limits may be construed as a denial.

## **PLAINTIFF'S CLAIM**

25.  There is no statutory basis for BLM's failure to disclose the requested information, and the Center has right of access to this information under the FOIA. There are many records, responsive to the Center's request, which BLM has neither released to Plaintiff nor claimed to be subject to any FOIA exemption.

26.  By failing to fully respond to the Center's July 30, 2009 FOIA request, the Defendant is in violation of the FOIA. 5 U.S.C. § 552(a)(6).

27.  By failing to respond to the Center's December 16, 2009 FOIA appeal, the Defendant is in violation of the FOIA. 5 U.S.C. § 552(a)(6).

**WHEREFORE**, Plaintiff requests that this Court:

(1)     Declare that Defendant has violated the FOIA by improperly withholding the records requested by Plaintiff;

(2)     Order Defendant to make the requested records immediately available to Plaintiff;

(3)     Award Plaintiff its costs and reasonable attorneys' fees in this action;

(4)     Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

February 11, 2009

Amy R. Atwood
application for admission *pro hac vice* pending
Center for Biological Diversity
P.O. Box 11374
Portland, Oregon 97211-0374
Tel: 503-283-5474; Fax: 503-283-5528
atwood@biologicaldiversity.org

Attorney for Plaintiff

10